UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————X

MASSACHUSETTS BAY INSURANCE
COMPANY and HANOVER INSURANCE
GROUP, INC.,

                Plaintiffs,

       -against-                              21 Civ. 9184 (CM)

SENECA INSURANCE COMPANY, GREAT
AMERICAN INSURANCE COMPANY, 2939 LLC,
AND SOME OTHERS,

                Defendants.

————————————————————————X

## DECISION AND ORDER DISPOSING OF
## ALL OUSTANDING MOTIONS FOR SUMMARY JUDGMENT

McMahon, J.:

      This is an insurance coverage dispute. Plaintiffs Massachusetts Bay Insurance Company

(MBIC) and Hanover Insurance Group, Inc. (Hanover) commenced a lawsuit seeking a declaration

that they were not required to defend and are not required to indemnify Defendant 2939 LLC in

connection with a lawsuit arising out of a construction accident that took place at a property owned

by 2939. *Wang and Lin v. Industria Superstudio, et al.*, Index No. 519101/2016 (the "Underlying

Action"). In the alternative, they seek a declaration that their liability is contractually limited, such

that 2939's own insurers – Defendants Seneca Insurance Company and Great American Insurance

Company – are required to reimburse Hanover for amounts already paid toward defense costs and

satisfaction of the judgment in the Underlying Action, up to the limits of their respective policies.

      At the time this lawsuit was commenced, the Underlying Action against 2939 (and others)

arising out of the construction accident was still pending. It has since been tried on stipulated facts.

At that trial, as was the case throughout, Plaintiffs defended 2939 as well as their own named insureds, Borgo Guglielmo, LLC d/b/a Industria (collectively, "Industria"). They undertook that defense without any reservation of rights. The court entered a $21 million judgment against 2939, Borgo/Industria, and the contractor that employed the injured worker (Bulson Management, LLC). $21 million happens to be the limits of the three insurance policies that were represented at the trial and available to satisfy the judgment. Plaintiffs have paid $16 million – the limits of their respective primary and excess policies – toward the satisfaction of that judgment on behalf of all judgment debtors except Bulson.[1] They now seek contribution from Seneca and Great American in the amount of $6 million.

For their part, Seneca and Great American seek to avoid liability altogether on several grounds – Seneca due to the incontestable fact that it was not notified of the accident and the resulting lawsuit filed by the injured worker until three and one half years after the accident took place; Great American because of the failure of 2939 and its principals (David and Linda "Gitty" Weiss) to cooperate in its investigation and defense of the underlying action or to obtain permission from Great American before allowing Plaintiffs to pay the judgment on their behalf.  2939, for its part, opposes Plaintiffs' request for a declaration that its insurers are liable to reimburse Plaintiffs for anything paid out in connection with the Underlying Action.[2] It also moves for a declaration that Plaintiffs and their insureds are contractually required to indemnify 2939 for the judgment entered against it in the full amount of the Plaintiff policies.

Everyone seeks summary judgment in support of their respective positions.

---

[1] Bulson's commercial general liability carrier, Catlin Specialty Insurance Company, paid the other $5 million; the judgment has been fully satisfied.

[2] The Weisses have ceased to matter, since they were dismissed as defendants in the Underlying Action after trial; no judgment has been or will be entered against them.

This is a lawsuit that never should have been brought. The accident was admittedly and indisputably caused by the negligence of Wang's employer Bulson Management LLC – a contractor hired by the tenant of the property at 39 South Fifth Street, Brooklyn, New York (Borgo/Industria) to renovate the demised premises.  39 South Fifth was originally owned by the Weisses, who deeded it to 2939, an LLC of which they were the sole members. The transfer took place after the Lease was signed but before the accident occurred. The Lease pursuant to which the Weisses/2939 rented the premises to Borgo/Industria, requires the tenant to indemnify and hold the "Owner" of the premises harmless from any judgments arising out of the negligence of the tenant's, *inter alia*, contractors. That obligation extends not only to the original Owners (the Weisses) but to their "successors and assigns." Plaintiffs are the insurers of Borgo/Industria, the indemnifying party. Whether 2939 qualifies as an "additional insured" under those policies – a matter about which much ink has been spilled in the numerous briefs filed in support of and in opposition to the various motions – is, ultimately, a fact of no relevance. Borgo/Industria's duty to indemnify 2939, the "Owner" of the demised premises as the successor in interest to the Weisses, is clear as a matter of simple contract law. Nothing in the Plaintiffs' insurance policies limits the applicability of Plaintiffs to answer for 2939's claim *in indemnity*. In fact, because their own insureds, Borgo and Industria, were found to be jointly and severally liable with 2939 for the entire amount of the judgment, the payment made by the Plaintiff insurers of the full amount of their policies ($16 million) can be attributed entirely to the liability of their own insureds.

The fact that Plaintiffs' insureds were required to indemnify 2939 to the full extent of its liability also disposes of Plaintiffs' argument that the four insurance policies in suit – Plaintiffs Mass Bay and Hanover, and Defendants Seneca and Great American – exhaust horizontally, such that Plaintiffs can obtain reimbursement from Seneca and Great American for a portion of the

amount they paid to satisfy the judgment. The insured tenant's contractual indemnification obligation destroys any horizontal exhaustion that might otherwise be required. The fact that the Lease set a $5 million floor on the procurement of coverage did not preclude Borgo/Industria from insuring for a greater amount, as it wisely chose to do. Moreover, to the extent that Plaintiffs seek reimbursement from Great American, its policy specifically provides that it is excess to any other insurance coverage available for the loss, with no limitation on the coverage for an indemnitee (as opposed to an "additional insured)." Seneca's Policy does not come into play at all because 2939's insurers were not timely notified about the accident or the resulting lawsuit. Under New York's Insurance Law, that delay in notification is presumptively prejudicial, and Plaintiffs have not successfully rebutted that presumption.

Additionally, Hanover (which controls both Plaintiff policies) is estopped from now denying coverage to 2939. Hanover spent more than four years defending 2939 without reservation before any attempt to disclaim coverage. Even after disclaiming coverage, Hanover continued to defend 2939 and paid $16 million on its behalf in the Underlying Action. It cannot now disclaim coverage on the grounds that no coverage existed in the first place.

The various pending motions for summary judgment are disposed of in accordance with the following opinion. The court reaches only grounds that are necessary to decide the motions; I am not addressing every alternative argument made by the parties.

### Statement of Undisputed Facts

The parties proffer a statement of undisputed facts and competing statements of additional facts, which consist principally of undisputed facts bearing an argumentative gloss n

favor of one side or another. The facts material to the resolution of this coverage dispute are not disputed. Here they are:

1. The Parties, the Property and the Lease

 1. The Lease – between Linda (Gitty) and David Weiss, as Owners of the property at 39 South Fifth Street, Brooklyn, NY (defined in the Lease as "Owner") and Borgo Guglielmo LLC d/b/a Industria Super Studio Overseas, Inc. (similarly defined as "Tenant") – was signed on or about May 30, 2016.

 2. Fabrizio Ferri executed the Lease as "manager" of Borgo.

 3. Section 20.02 of the Lease provides: "This lease and the covenants and conditions contained herein shall inure to the benefit of and be binding upon *Owner, its successors and assigns, and shall be binding upon Tenant, its successors and assigns."* (Emphasis added)

 4. Section 20.11 of the Lease provides: "all of the covenants and conditions set forth in this lease *shall be binding upon and inure to the benefit of the heirs, successors, assigns of the parties* hereto." (Emphasis added).

 5. Among the covenants and conditions of the Lease that are binding on and inure to the benefit of any "successors" to either Owner or Tenant is the covenant found in Section 9.01, which provides as follows: "Tenant covenants that except for the intentional, negligent or otherwise tortious acts or omissions of Owner, its agents, contractors and employees, *Owner shall not be liable for any injury to or death of persons* or damage to property of Tenant or any other person during the Term, *from any cause whatsoever…by reason of the construction, use, occupancy or enjoyment of the Premises by Tenant* or any person therein or holding under Tenant. *Tenant hereby agrees to indemnify and saves harmless Owner of the entire building of which the Premises is apart from all such claims, actions, demands, costs and expenses and*

*liability whatsoever*…arising out of the negligent or otherwise tortious actions or omissions of, or a breach of this lease, by Tenant, its agents, contractors, servants, employees, or invitees…." (Emphasis added).

6.      Another covenant that inures to the benefit of any successor Owner is found in Section 9.03(a)(i), which requires Tenant to obtain, "General Liability Insurance covering the premises and Tenant's use against claims for personal injury or death and property damage occurring upon, in or about the Premises, such insurance to afford protection to the limit of not less than $5,000,000 in respect of an instance of injury or death and $500,000 property damage." Notably, this section of the Lease makes no mention of limiting coverage under the insurance so procured to "additional insureds;" rather, it is plainly related to securing the Indemnification obligation found in the previous Section 9.01.

7.      On July 14, 2016, the Weisses incorporated 2939 LLC, a limited liability corporation of which David and Gitty Weiss were the sole members.

8.      On July 18, 2016, the Weisses transferred ownership of the property to 2939 pursuant to a deed which provided that the Premises were transferred "*together with the* appurtenances and all the estate *and rights of the party of the first past in and to said premises.*" (Emphasis added).

9.      Among the estates and rights of the Weisses in the premises to which 2939 succeeded were their estate as Landlord under the Lease and their rights under the Lease with Borgo/Industria.

2.  The Insurance Policies in Suit

10.      Borgo and Industria obtained a primary and an excess policy on the premises from Plaintiffs Massachusetts Bay Insurance Company (MBIC) and Hanover Insurance

Company ("Hanover"), which are related entities operating under the umbrella of the Hanover Insurance Group.

11.    The MBIC policy (ZDY 7569992 13 8606836) covered Industria and Borgo as named insureds and provided a maximum of $1 million in coverage for death or bodily injury attributable to the negligence of Industria, Borgo, or their agents and employees.

12.    The MBIC policy provided that, "Any person or organization with whom you agreed in a written contract, written agreement or permit that such person or organization to add an [sic] additional insured on your policy is an additional insured only with respect to liability for 'bodily injury,' 'property damage,' or 'personal and advertising injury" caused, in whole or in part, by your acts or omissions, or the acts or omissions of those acting on your behalf......"

13.    The MBIC policy further provides that the insurance as to "additional insureds" "applies on a primary basis if that is required by the written contract, written agreement or permit."

14.    The MBIC policy further provides, in its additional insured endorsement, that "If you agree in a written contract, written agreement or permit that the insurance provided to any person or organization included as an Additional Insured…is primary and non-contributory…..This insurance is primary to other insurance that is available to the Additional Insured which covers the additional Insured as a Named Insured."

15.    Hanover Policy No. UHY 7570189 12 8606836 is a follow the form policy that provided a combined single limit of $15 million in excess coverage. Because it is a follow the form policy, the provisions of the Mass Bay primary policy are deemed incorporated into the Hanover policy, and Hanover's obligations are co-terminous with those of Mass Bay – only in a much greater amount.

16.     2939 obtained its own insurance coverage from Seneca Insurance Company ("Seneca") pursuant to Policy SCC2103683, which contains limits of liability in the amount of $1 million per occurrence.

17.     The Seneca policy provides that it applies on an excess basis to any other insurance available to 2939 as an additional insured.

18.     2939 also obtained its own excess coverage from Great American Insurance Company under the terms of Policy No. UM30073953, which provided coverage of up to $5 million per occurrence.

19.     The Great American Policy provides that it will apply only in excess of applicable limits of any other insurance applicable "to a liability that is also covered by this Policy."

20.     The Seneca policy required 2939 to provide notice of any occurrence and suit "as soon as practicable." The Great American policy required 2939 to provide notice of any occurrence and any lawsuit "immediately," and to "immediately" forward any pleadings to the insurer. The Great American policy also required 2939 to cooperate with any investigation, defense or settlement of any claim or suit, and to assist, "upon our request, in the enforcement of any right against any person or organization which may be liable to the Insured because of injury or damaged to which this insurance may also apply."

21.     The Great American policy further provides that, "No Insured will voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent, except at their own cost."

22.     The Weisses were identified as additional insureds on both the Seneca and Great American policies, but only with respect to the conduct of 2939's business – which was owning and leasing the Property.

23.    Finally, Bulson, the contractor hired by Borgo/Industria, was insured under two policies: a Commercial General Liability (CGL) policy issued by Catlin Specialty Insurance Company under the terms of Policy No. GLA-902237-0716, and a workers compensation policy issued by Continental Indemnity Company bearing number 46-277428-01-02.

3.  The Occurrence

24.    On June 13, 2016, shortly after the lease was signed, Industria retained Bulson Management LLC to perform construction work at the Property.

25.    On July 19, 2016, Ri Xian Wang, an employee of Bulson, was rendered totally quadriplegic due to a cervical spine injury suffered while working at the Property. He fell from a scaffolding.

26.    New York's "Scaffold Law," Labor Law Sec. 240, provides as follows: "All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed" This law has been interpreted to impose strict liability, without regard to fault, on anyone who owns property on which an accident occurs as a result of unsafe scaffolding. *See e.g.*, *Gen. Star Nat'l Ins. v. Universal Fabricators, Inc.*, 585 F.3d 662, 672 (2d Cir. 2009).

27.    On August 18, 2016, Industria's broker submitted a General Liability Notice of Occurrence/Claim to MBIC.

28.     On August 22 and September 22, 2016, MBIC and Hanover sent letters to Bulson

placing it on notice of the claim and tendering the defense of Industria to Bulson's carriers.

29.     On October 28, 2016, Wang and his wife filed a lawsuit in the Supreme Court of

the State of New York (the Underlying Action). The original complaint named David Weiss,

Linda (Gitty) Weiss, and Industria as Defendants.

30.     David Weiss became aware of the occurrence on or about September 1, 2016 – six

weeks after the accident occurred – when he was contacted by Ferri, who was acting in his

capacity as manager of Borgo/Industria. Weiss was told that Borgo's insurer would take care of

the situation – a representation consistent with the duty to indemnify found in Section 9 of the

Lease.

31.     James Sawicki, Hanover's staff counsel, also advised Weiss, in a letter dated

November 8, 2016, that Hanover would defend the Weisses in the Underlying Action.

32.     Weiss did not notify Seneca or Great American about the accident, or about the

lawsuit that was subsequently filed, either when he learned about them or for more than three

years thereafter. The record reveals no reason why Weiss could not have given notice; rather,

Weiss failed to give notice because of his own conscious decision to allow Borgo/Industria to

"take care of" the matter. He made this decision despite the plain provisions in his own insurance

policies that required prompt notice of any occurrence and the immediate forwarding of any

pleadings.

4.  The Underlying Litigation: Wang and Lin v. Industria Superstudio, et al., Index No.
    519101/2016

33.     As mentioned above, the Wangs sued Industria and the Weisses in October of

2016, just three months after the accident. Hanover's house counsel, Crisci Weiser McCarthy –

in the person of James Sawicki, Esq. – was assigned to defend the Weisses and Industria. Donna Normile was the assigned claims adjuster.

34. On February 17, 2017, with Hanover's authority, staff counsel James Sawicki filed an Answer to the initial Complaint on behalf of the Weisses and Industria jointly.

35. In an effort to get the Weisses out of the lawsuit, Crisci told counsel for the Wangs that the actual owner of the property was 2939. This led to the filing of an amended complaint on January 5, 2017. That pleading, which named 2939 *and* the Weisses as defendants, was served on the Weisses on January 14, 2017.

36. The decision that Hanover would defend the Weisses and 2939 was initially made by Sawicki, who, after reviewing the Deed – which had granted 2939 the benefit of all covenants under the Lease – concluded that 2939 qualified both as an "additional insured" under the MBIC and Hanover Policies and as a contractual indemnitee as the "Owner" of the premises pursuant to the terms of Section 9.01 of the Lease.

37. Claims Adjuster Donna Normile of Hanover agreed with Sawicki's assessment. Normile also concluded that any liability of 2939 would simply result in a "negative risk transfer" back to Borgo/Industria under the terms of the Lease, so there were "no coverage issues." Normile's assessment was approved by her supervisor, Joseph Pender.

38. Hanover undertook the defense of 2939 and the Weisses without any reservation of rights and did not alert the Weisses or 2939 that there were any coverage issues.

39. The Weisses did not notify Seneca or Great American, the insurers of 2939, their LLC, about any of this, despite the clear provision in their contracts of insurance with Seneca and Great American requiring that they give notice "as soon as practicable" after learning about a claim, and that they provide their insurers with copies of all pleadings "immediately." The record

reveals no reason why it would not have been "practicable" to give notice as required by the policies, or to turn the pleadings over to their insurer "immediately." Failure to do so represents a clear breach of a condition of their insurance contract on the part of the Weisses/2939; they were not entitled to withhold notice on the basis that Hanover had undertaken their defense, or that Borgo/Industria assured them its insurer would "take care of" the matter.

40.     The Crisci firm filed an answer to the original complaint on behalf of the Weisses and Industria on February 17, 2017, and an answer to the amended complaint on behalf of 2939 and the Weisses and Industria on May 10, 2017. The answer contained no cross claims by the Weisses or 2939 against Industria and asserted no third party claims against Borgo. While the obligation to indemnify does not trigger until liability attaches to the indemnitee, it is not uncommon for claims for indemnification to be asserted as third-party claims, so that all matters relating to liability can be resolved in a single forum.

41.     The defense of the Weisses, 2939, and Industria was transferred to the firm of Baxter Smith Shapiro (in the person of attorney Sim Shapiro, Esq.) over the summer of 2017. That firm filed a Third Party Summons and Complaint against Bulson on behalf of 2939, the Weisses, and Industria on September 15, 2017.

42.     Bulson filed an answer to the Third Party Complaint on March 5, 2018. It also filed a Third Party Complaint against Borgo and a subcontractor. Shaprio answered that Third Party Complaint on behalf of the Weisses, 2939, Industria and Borgo.

43.     Borgo was eventually added as a direct defendant in the Underlying Action and Shapiro filed an answer to the amended complaint adding Borgo on behalf of 2939/Weisses and Borgo/Industria jointly. Again, no claims were filed by 2939 and the Weisses, despite their status

under the lease as indemnified parties and the distinct possibility that they qualified as "additional insureds" under Borgo/Industria's policies.

44. The court entered a Preliminary Conference Order on March 14, 2018. It required any impleader to be completed within 45 days, or by April 30, 2018. No claims were impleaded by 2939/Weiss against Industria or Borgo by the deadline date in the Preliminary Conference Order. While this did not extinguish any claim for indemnification pursuant to Section 9 of the Lease, it did eliminate the opportunity to have issues relating to indemnification resolved in the Underlying Action – which would have obviated the need for and expense of this lawsuit.

45.      At no time did any representative of Hanover or anyone associated with Shapiro firm suggest that 2939/Weisses have independent counsel assess their liability or their litigation posture.

46.      On April 18, 2019, the court entered a final pre-trial note, which gave the parties 60 days to make "SJ [summary judgment] motions" and requiring the Wangs to file a note of issue by September 26, 2019. A note of issue, in New York State court practice, is a notice indicating that the case is ready for trial. CPLR 3402(a).

47.      The parties have stipulated that the 60-day period for making summary judgment motions ran from the date of the filing of the note of issue.

48.      At the time the April 19, 2019 order was entered discovery had barely begun. Wang was deposed over the course of three days between February 26, 2019 (prior to the entry of the final pre-trial note), and again on May 1, 2019 (after entry of the note). His wife was deposed on May 3 and July 1, 2019 – both sessions after entry of the final pre-trial note.

49.      The note of issue was filed on September 24, 2019. As of that date the Weisses had not been deposed.

50.    Summary judgment motions were due 60 days later, by November 23, 2019. No motions were made by that date by any party against any party, including specifically against Bulson, the contractor.

51.    Discovery, including an independent medical examination (IME), was conducted during 2019, but was not completed by the date when the note of issue was filed. So, the Shapiro firm moved to vacate the note of issue and/or to extend the time to move for summary judgment due to outstanding discovery.

52.    The motion to extend was decided by Motion Order dated November 25, 2019. It was granted in part and denied in part.

53.    Specifically, the Motion Order was granted to the extent of extending the deadline for completing the depositions of the Weisses until December 31, 2019, and required any outstanding disputes concerning document discovery to be resolved by December 18, 2019. These dates were subsequently modified to extend the date for completing the Weisses' depositions until January 22, 2020.

54.    The Motion Order was otherwise denied. Specifically, the court denied Shapiro's request for an extension of time to file impleader actions or otherwise file new claims and denied the request to change the deadline for the filing of summary judgment motions – both of which dates had already passed. This relief was denied by the court's crossing out the language that would have granted such relief.

55.    The order granting Shapiro's request for additional time to complete the depositions of the Weisses (the "extension order") similarly crossed out language relating to requests extending the time for filing of impleader actions or new claims or summary judgment motions. To emphasize the point, the judge wrote "denied" next to the crossed out words.

56.     No interlocutory appeal was taken from the Motion Order or the extension order.

57.     The Weisses were finally deposed; the date does not appear to be in the record.

58.     At his deposition, Mr. Weiss testified that he had made a conscious decision not to notify Seneca (his own insurer) about Wang's accident, in reliance on Ferri's prior assurance that he would "take care of it."

59.     Counsel assigned by Hanover to conduct the joint defense of the Weisses/2939 and Borgo/Industria were well aware of the fact that the value of Wang's injuries exceeded the $16 million policy limits, which meant that the Weisses/2939 were facing the possibility of an excess judgment that could result in personal exposure and the loss of their assets (which, in the case of 2939, was the building itself). Nonetheless, neither Hanover nor its chosen assigned counsel suggested that the Weisses and 2939 obtain independent legal advice.

60.     Instead, on March 31, 2021, Shapiro filed yet another answer in the underlying action on behalf of the Weisses/2939 and Borgo/Industria, again without asserting any third party claims or cross claims on behalf of the Weisses and/or 2939 so that those issues could be resolved in the Underlying Action.

61.     At all times mentioned above, Hanover was defending 2939 and the Weisses with no reservation of rights and on the basis that there was no coverage issue. No coverage dispute emerged until August 2021 (see infra. ¶ 74).

62.     While Hanover was defending 2939/Weisses, it failed to move for summary judgment against any party, including Bulson. It also did not explore settlement at an early stage, on the ground that the Wangs had not yet made any settlement offer at a number below the policy limits, even though it was aware that its clients were exposed to a judgment in excess of the policy limits.

63.    Hanover failed to explore settlement even when Bulson's insurers (both its CGL carrier and its Workers Comp carrier) inquired about mediation and advised that they were prepared to split liability on a 60/40 basis in favor of Hanover and its insureds. Hanover refused to discuss mediation or explore settlement until the Wangs made a settlement offer. This would prove significant when Bulson's workers compensation insurer later disclaimed coverage.

64.    The Underlying Action was eventually tried to the court on stipulated facts. Among the facts stipulated were that the Property was owned by 2939 and rented to Borgo/Industria; that Ferri hired Bulson to perform renovations; that Bulson was retained by Industria to perform renovations; and that Wang was injured on July 19, 2016 while working for Bulson at the property.

65.    2939 and Borgo/Industria submitted a memorandum of law seeking common law and contractual indemnity against Bulson. 2939 did not seek a declaration of indemnity against Borgo/Industria, whose insurers (Plaintiffs) were controlling its defense.

66.    The Bench Trial was held on May 23 and 25, 2023 in Kings County Supreme Court.

67.    On May 26, 2023, the court issued a decision making the following findings of fact and conclusions of law:

(a) 2939 owned the Property on the date of the accident;

(b) Borgo, a company owned by Ferri, rented the property from 2939 pursuant to the Lease;

(c) Industria, another company owned by Ferri, operated its business at the Property;

(d) Ferri formed Borgo to sign the Lease for the Property intending that Industria would operate its business at the property;

(e) Industria, through Ferri, hired Bulson to perform renovations at the Property;

(f) Wang was Bulson's employee and was not directed or supervised by 2939 or Borgo/Industria;

(g) Bulson was responsible for safety at the Property;

(h) Bulson directed and controlled Wang's work at the property;

(i) Wang sustained grave spinal injuries, including quadriplegia;

(j) 2939 and Borgo/Industria were not negligent, but were nonetheless statutorily liable to Wang pursuant to NY Labor Law Sec. 240(1) by reason of Bulson's negligence;

(k) 2939 and Borgo/Industria are entitled to common law indemnification from Bulson due to Bulson's negligence;

(l) 2939 and Borgo/Industria are entitled to contractual indemnification from Bulson pursuant to Bulson's contract with Industria;

(m) The Wangs were entitled to $21 million in damages.

68.     On June 23, 2023, the court entered a judgment against Bulson, 2939, and Borgo/Industria in the amount of $21 million. The judgment held defendants jointly and severally liable for the full amount of the judgment. The claims against the Weisses individually were dismissed with prejudice.

69.     The judgment has been paid in full. Plaintiffs paid the limits of their policies – $16 million – toward satisfaction of the judgment on behalf of 293, Borgo and Industria. Catlin, Bulson's CGL insurer, paid the remaining $5 million.

5.  Seneca and Great American Are Finally Notified; the Coverage Dispute Arises

70.     Seneca and Great American were finally notified of the occurrence and the pendency of the underlying action on January 23, 2020—three and one half years after the accident – when 2939's broker submitted a General Liability Notice of Occurrence/Claim to each of them on its behalf.

71.     By letter dated February 12, 2020, Seneca disclaimed coverage on late notice grounds.

72.     Great American did not immediately disclaim coverage, but, in a letter dated May 25, 2021, reserved all rights while it investigated the claim.

73.     In a letter sent to Plaintiffs on the same day, May 25, 2021, Great American advised MBIC and Hanover that it was Great American's position that their policies should be exhausted before any coverage was triggered under the Seneca and Great American policies.

74.     In a letter dated August 2, 2021, MBIC and Hanover responded to Great American's letter by asserting, for the first time, that 2939 was not entitled to any defense or indemnification under the Plaintiffs' policies, because it was not a party to the Lease.

75.     Hanover's counsel did not cease representing 2939 and the Weisses at that point, despite the fact that MBIC and Hanover were now taking the position that 2939 was not entitled to coverage under the Plaintiffs' policies – a position adverse to 2939 and, ultimately, to the Weisses.

76.     In the August 2, 2021 letter, MBIC and Hanover also took the position that all applicable policies should exhaust horizontally rather than vertically and that exposure under the MBIC and Hanover policies was capped at $5 million because the Lease required the tenants to purchase "not less than $5 million" in insurance.

77.     Seneca responded to the August 2, 2021 letter on October 8, 2021. In its response, Seneca again disclaimed coverage altogether due to late notice. It took the position that 2939 was a party to the Lease and so was contractually entitled to defense and indemnification under Plaintiffs' policies; that the policies exhausted vertically rather than horizontally; and that Plaintiffs' exposure was not capped at $5 million (the minimum amount of insurance required under the Lease) but extended to the limits of the Plaintiffs' policies.

78.     On or about November 5, 2021, MBIC and Hanover filed the instant action, seeking a declaration that they were not obligated to defend or indemnify 2939 as an additional insured and that Seneca and Great American must defend and indemnify 2939 instead.

79.     Despite its disclaimer of coverage, Seneca offered to provide 2939 and the Weisses with independent counsel – both in order to pursue claims against Borgo/Industria in the Underlying Action (or in an independent action) and to represent them in the instant lawsuit. Weiss, however, declined these offers, on the ground that he did not want to bring claims against a "good tenant" (Borgo/Industria) and that Hanover had already provided 2939 and the Weisses with counsel to represent them in the instant action – an action in which Hanover's interests were not necessarily aligned with theirs.

80.     Neither Seneca nor Great American was consulted about the payment by Plaintiffs of the sum of $16 million on behalf of, inter alia, 2929, toward the satisfaction of the judgment in the Underlying Action, despite the provision in Great American's policy prohibiting any payment by any Insured under its policy (i.e., 2939) without its consent.

6.  Relevant Collateral Litigation

81.     As noted above, Bulson, the contractor which has now been adjudicated to have been the only negligent party with respect to Wang, had two insurance policies that are relevant

to this lawsuit: a commercial general liability policy issued by Catlin and a workers comp policy issued by Continental.

82.     On September 12, 2019, Hanover filed a declaratory judgment action against Catlin, seeking coverage under the Catlin CGL policy. Coverage under the workers comp policy was, obviously, available only to Wang.

83.     On May 4, 2020, Continental filed a declaratory judgment action disclaiming coverage for the subject accident based on Bulson's alleged failure to disclose Wang's employment and on rescission.

84.     When Bulson failed to answer Continental's complaint, MBIC and Hanover moved to intervene in Continental's declaratory judgment action to protect their interest in having that pot of money available to satisfy any judgment that the Wangs might obtain. Their motions were denied on November 10, 2020.

85.     On November 19, 2020, the District Court for the Eastern District of New York entered a default judgment in favor of Continental, holding that Continental owed no duty to defend or indemnify Bulson in connection with the Wang accident and rescinding the policy.

86.     On or about December 14, 2020, four separate parties represented by Shapiro – 2939, the Weisses, Borgo/Industria, and MBIC –commenced a declaratory judgment action (2939 DJ Action) against Continental, seeking a declaration that, the default judgment notwithstanding, Continental did owe a duty to indemnify to the various plaintiffs.

87.     Seneca offered 2939/Weisses independent counsel in connection with the 2939 DJ Action, which was declined.

88.     Continental removed the 2939 DJ Action to the United States District Court for the Eastern District of New York. That court dismissed the action on September 21, 2023, on the

ground that Continental's default judgment against its insured, Bulson, precluded third parties from asserting claims against the policy. (Joint Ex. 53)

89.    On October 23, 2024, the United States Court of Appeals for the Second Circuit vacated the dismissal of the 2939 DJ Action, ruling that Continental's default judgment against Bulson – which was obtained before any judgment was entered in favor of the Wangs in the Underlying Action – was not preclusive as against the other insurers and their insureds. *2939 LLC v. Continental Indemnity Co.*, No. 23-7466, 2024 WL 4553900 (2d Cir. Oct. 23, 2024). As a result, the 2939 DJ Action is presently back in the Eastern District of New York on remand. There has been no final adjudication of whether Continental's disclaimer of coverage will stand.

### Standards for Summary Judgment

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  In addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Whether any disputed issue of fact exists is for the Court to determine. *Balderman v. United States Veterans Admin.*, 870 F. 2d 57, 60 (2d Cir. 1989).  The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. *Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on

conclusory allegations or unsubstantiated speculation." *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998).

Not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." *Anderson*, 477 U.S. at 248. Finally, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Industries Co.*, 475 U.S. at 586. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.

As is customary in these insurance coverage disputes, everyone has moved for summary judgment against everyone else. Ultimately the question is the proper construction of various contracts – the Lease, the Deed, and the various insurance policies. "When the question is a contract's proper construction, summary judgment may be granted when [the contract's] words convey a definite and precise meaning absent any ambiguity." *Travelers Indemnity Co. v. Trisura Specialty Ins. Co.*, 2024 U.S.Dist LEXIS 101953, at *6 (SDNY June 7, 2024) (quoting *Seiden Assocs. Inc. v. ANC Holdings*, Inc. 959 F. 2d 425, 428 (2d Cir. 1992)). I see no ambiguity in any of the contracts that have been presented to the court.

I dispose of the various issues relevant to deciding the summary judgment motions as follows.

> *A. 2939 is Indemnified by Borgo/Industria as the "Owner" of the Premises per the terms of the Lease, and the MBIC and Hanover Policies Must Answer to 2939 as the Contractual Indemnitee of Plaintiffs' Named Insureds, Borgo and Industria*

MBIC and Hanover commenced this action seeking principally a judgment declaring that their policies do not cover 2939 as an "additional insured" under the terms of their policies. They move for summary judgment on that ground.

But 2939 is entitled to indemnification from Borgo/Industria – the named insureds under the MBIC/Hanover policies – whether or not it qualifies as an "additional insured." In Section 9.01 of the Lease, the Tenant agreed to indemnify the "Owner" from any liability for the negligence of Tenant's "contractors" (Bulson). On the date of the accident, 2939 was the "Owner" of the demised premises. Therefore, Tenant agreed to indemnify it.

Of course, the Owner at the time the Lease was signed was the Weisses individually – not 2929, their LLC. So Plaintiffs take the position that Borgo/Industria owed 2939 no duty of indemnification.

But Plaintiffs are wrong. The terms of the lease to which their insureds agreed make that perfectly clear.

In Sections 20.02 and 20.11, Tenant Borgo/Industria expressly agreed to extend the benefit of every covenant in the Lease – including the indemnification covenant found in Section 9.01 of the Lease – to any "successor" Owner of the demised premises. 2939 is the Weisses' successor as Owner of the demised premises. The property was deeded to 2939 by the Weisses, together with all estates that the Weisses had in the building – including, of course, the estate created by the Lease. 2939 is, therefore, entitled to indemnification from Borgo/Industria for its statutory liability to Wang pursuant to the Scaffold Law. And just as Borgo/Industria are covered by the Plaintiffs' policies, that coverage passes through, to the limit of the policies, to the Named Insureds' contractual indemnitee. Whether or not 2939 qualifies as an "additional insured" under

the terms of the insurance policies is of no moment; the Lease, which make it the indemnitee of Plaintiffs' insureds, decides the issue.

The relevant facts are straightforward.

The Lease by its terms requires the tenant of the premises (Borgo/Industria) to indemnify and save harmless from liability the "Owner" of the Premises whenever liability arises from the negligent or otherwise tortious acts of the Tenant, "its agents, *contractors*, servants, employees or invitees." (Sec. 9.01).

Per the terms of the Lease, this indemnity extends, not just to the original Owner/Lessor (the Weisses), but also to 2939, which, pursuant to the Deed, succeeded to "all the appurtenances and all the estates and rights…in said Premises" – one of which estates was the Lease.

Borgo/Industria's obligation to indemnify extends to 2939 because Section 20.02 of the Lease provides that every covenant and condition in the Lease (including the covenant by Tenant to indemnify "Owner") "shall inure to the benefit of and be binding upon Owner, *its successors* and assigns, and shall be binding upon Tenant…." (Sec. 20.02). Just to hammer that point home, Section 20.11 of the Lease further provides that, "All of the covenants and conditions set forth in this Lease shall be binding upon and inure to the benefit of the heirs, successors, assigns of the parties hereto."

The words "inure to the benefit of the…successors…of the parties hereto" are unambiguous. They confer on any successor in interest to the Weisses as Owners of the property the benefit of the Tenant's covenant to hold "Owner" harmless from liability for any acts of negligence by Tenant's contractors. The Tenant (Borgo/Industria) agreed to extend liability beyond the Weisses to their successors in interest, if any. The indemnity does not extend to acts of negligence by the Owner, but the only party found to have been negligent by the court in the

Underlying Action was Bulson; 2939 was expressly found not to have been negligent in any respect. It was liable to the Wangs only because of the provisions of New York's Scaffold Law, which provides for strict liability against owners of property where accidents occur, even if they had nothing to do with the accident (as was the case here).

Ergo, per the terms of the Lease, 2939 is indemnified by Borgo/Industria, and must hold 2939 – the Owner of the demised premises – harmless. This means the obligation to indemnify extends to the entire amount of the judgment entered against 2939 – all $21 million of it. The Lease requires it. The matter could not be clearer – as Donna Normile, Plaintiff Hanover's claims own adjuster, recognized back in 2016, four years before Hanover first disputed coverage.

That there is a coverage dispute over whether 2939 qualifies as an "additional insured" under the terms of the *policies* (rather than an indemnitee under the provisions of the *Lease)* is ultimately irrelevant. Courts in New York adhere to the doctrine of circuity of action, which seeks to avoid circular litigation when the parties will end up in the same place. *Century Sur. Co. v. Metropolitan Transit Authority*, No. 20-1474-cv, 2021 WL 4538633, at *3 (2d Cir. 2021); *Indemnity Ins. Co of N. Am, v. St. Paul Mercury Ins. Co.*, 74 A.D. 3d 21 (1st Dept. 2010); *Mass Bay Ins. Co. v. Harco Nat'l Ins. Co.*, 2015 WL 13742420 (E.D.N.Y. 2015). This doctrine precludes coverage arguments such as Plaintiffs' "additional insured" argument when, as a practical matter, the insurer is going to be obligated to reimburse the party in any event. That is the fact pattern we face here. Borgo/Industria's contractor has been found to be negligent, so pursuant to Section 9.01 of the Lease, the Owner of the premises (which, it has been stipulated, was 2939 on the date of the accident) is entitled to indemnification from Borgo/Industria.

Plaintiffs' argument that it is not liable to cover the indemnification because Borgo/Industria and 2939 did not sign their own contract is grounded in language in the policies

that relates solely to coverage afforded to an "additional insured" under the policies. Whether or not that policy language disqualifies 2939 from "additional insured" status – an issue I have no need to reach and I specifically decline to reach – has nothing whatever to do with Borgo's and Industria's contractual obligation to indemnify and hold harmless the "Owner" of the premises from liability for the negligence of the Tenant's contractors (i.e., Bulson), and to extend that indemnity to any successor in interest to the original Owners, the Weisses. It does not matter whether Borgo/Industria and 2939 signed a written contract specifying that the latter would be an "additional insured" under any policies it procured as required by Section 9.03 of the Lease. Borgo/Industria signed a Lease pursuant to which they as Tenants agreed to indemnify 2939 – as successor to the original Owner identified in the Lease – and to hold the "Owner" harmless from any liability to Wang, who was injured as a result of Bulson's negligence. Under the Lease, all covenants made by the Tenant – including the covenant to indemnify and to insure for that purpose – inure to the benefit of the original Owner's "successor." The Tenants agreed to that. They have insurance that can be used to satisfy that obligation. It must be so used. End of story.

Similarly, Plaintiffs' argument that 2939 is not entitled to contractual indemnity because the Lease was not assigned to 2939 when the property was transferred does not wash. MBIC and Hanover insist that the indemnity provision of the Lease are personal obligations owed only to the original Lessors – the Weisses – absent an assignment. But the language of the Lease itself eliminates this argument. In the Lease, the indemnitors, Borgo and Industria, specifically agreed that their covenants would extend to the Weisses "successors" in interest – not solely to their "assignees." The Lease does not condition that promise on their part on the execution of any assignment. If it did, then the Lease would provide only that "assignees" of the original Owner

were entitled to indemnification. That is not what the Lease says. This court has no intention of rewriting the contract into which Borgo/Industria freely entered.

Plaintiffs argue that the agreement to indemnify the owner was personal to Borgo and the Weisses, despite the language in the Lease which agreed that the covenant would apply to the Weisses's successor, here 2939. Plaintiffs incorrectly rely on *Gilbane Bldg. Co./TDX Constr. Corp v. St. Paul Fire & Marine Ins. Co.*, 31 N.Y.3d 131, 135 (2018), which is inapplicable to the facts of this case. In *Gilbane Bldg. Co.*, DASNY hired both the named insured (Samson) and the potential additional insured (Gilbane Bldg. Co.) on a construction project. There was no contractual relationship between Samson and Gilbane. The Court of Appeals concluded that on those facts, Gilbane was precluded from coverage in the absence of privity of contract with Samson. *Id.* In the instant case and unlike in *Gilbane*, Borgo/Industria did have a direct contractual relationship with 2939, which was a successor to the Weisses under the terms of a Lease that specifically provided that "the covenants and conditions [contained in the Lease] inure to the benefit of and be upon Owner, its successor and assigns, and shall be binding upon Tenant . . . ." Dkt. No. 65–4, at 39.

Plaintiffs also rely on *Bank of N.Y., Albany v. Hirschfeld,* 37 N.Y.2d 501 (1975), in support of their argument that "in the absence of an affirmative assumption, a grantee is not liable on any covenants or agreements by which the grantor may have bound himself, unless of course, the covenant runs with the land." In that case, the lease at issue required that the landlord (then Hirschfeld) provide the Bank with 10 free parking spaces. After conveying the property to Teachers' Retirement System, the bank filed suit against Hirschfeld and Teachers' Retirement System to enforce the parking arrangement. *Id.* at 505. Hirschfeld then sought a declaration that Teachers' Retirement System was obligated to provide the parking spaces to the bank. *Id.* The

Court of Appeals did not reach the question of whether the contractual indemnification was a

covenant running with the land because, as the successor owner, Teachers' Retirement System

had affirmatively assumed the contractual liability of the original landlord to carry out the

covenants and terms of the lease – even without a provision that expressly provided that the

covenants would bind successor owners. *Id.* at 506. Here, Borgo/Industria affirmatively agreed in

Section 20.02 of their Lease with the Weisses that the covenants and conditions of the lease

"shall inure to the benefit of and be binding upon Owner, its successors and assigns." Dkt. No.

65–4, at 39. In light of that provision, there is no need for the Court to reach the question of

whether the contractual indemnity obligation ran with the land. *Bank of N.Y., Albany*, 37 N.Y.2d

at 505.

Plaintiffs cite *Reid v. McCrum*, 46 Sickels 412 (N.Y. 1883), in support of their proposition

that indemnity agreements do not run with the land without an express assignment of a lease to a

subsequent landowner. In that case, the Court of Appeals found that a covenant in a mortgage to

keep buildings on the mortgaged premises insured for the benefit of the mortgagee was not a

covenant running with the land, but was personal to the original covenanting parties, who were

specifically named in the mortgage agreement. *Id.* Unlike the lease at issue in this case, the

mortgage agreement in *Reid* contained no similar language dictating that the covenant would "be

binding upon Owner, its successors, and assigns." Dkt. No. 117–4, at 20.

By contrast, in *Bacik v. JEP Restaurant Corp*. No. 150929/13, slip op. at 11 (Sup. Ct. NY

County August 29, 2016), the Court held that, although 9 East was not party to the lease that

contained the contractual indemnity obligation provision, it was "entitled to all the rights which

the previous owner, as grantor, had in the premises and in the Lease," because it was the grantee

of real property encumbered by the lease. *Id.* at 10. The Court rejected the contention that a

formal assignment was required to transfer all of the grantor's rights under the lease on the

grounds that the building at issue was "conveyed without reservation." *Id.* at 10 (quoting

*Clemente Bros., Inc. v. Peterson-Ashton Fuels, Inc.*, 29 A.D.2d 908 (3d Dep't 1968). The court in

that case gave short shrift to the argument that the indemnification agreement in the lease was

somehow "personal" only to the original landlord and not to a successor landlord,[3] concluding

that obligations to indemnify on the basis of the negligent maintenance of real property "arise out

of the tenant's use and possession of the Building and thus run[] with the land. *Id.* at 11.

Here, there can be no question that the duty to indemnify arises out of Borgo/Industria's

tenancy. The accident that brought us here was caused by the Tenant's contractor, who was

making renovations to the leased premises on behalf of the Tenant. The facts of this case are thus

indistinguishable from those in *Bacik*, and I reach the same result.

In short, having agreed to extend the benefit of their various covenants to the designated

Owner's "successors," Borgo and Industria cannot walk away from their obligation to indemnify

2939, which is indubitably the "successor" to David and Linda Weiss as the Owner of the

demised premises, fully from any liability arising out of the unfortunate accident that took place

on July 19, 2016.[4] Nor can the Plaintiffs get out of insuring that obligation, on any ground.

---

[3] To the extent that the court's reasoning was grounded in RPL Sec. 223, I am not following *Bacik*; I specifically decline to reach the issue of whether Sec. 223 has anything to do with this case. I am persuaded, however, by the *Bacik* court's finding that an agreement that the covenants in a lease, that by its terms extended to successors in interest to a contracting party, is not "personal" to that party.

[4] The argument that Magistrate Judge Lehrburger has already decided this issue, and that his decision is law of the case, is nonsense – although I see the matter exactly as the learned Magistrate Judge did on the merits. Judge Lehrburger had before him a motion for leave to amend a pleading. In order to decide that motion he was required to decide whether amendment would be futile. This required him to determine whether the amended pleading alleged a plausible claim. It did not require him to decide that the pleading party would prevail if allowed to assert that claim. Judge Lehrburger simply concluded that the claim was sufficiently plausible to pass muster if a motion to dismiss were made under Fed. R. Civ. P. 12(b)(6). He had no power to decide anything more, since the parties have not stipulated that the Magistrate Judge could decide any dispositive motions in this case. 28 U.S.C. §636. Had Judge Lehrburger purported to "decide" the ultimate issue of whether 2939 was a contractual indemnitee (or, for that matter, an additional insured), he could at most have issued a Report and Recommendation for review by this court. The only

*B. In Any Event, Neither Seneca Nor Great American Owes Anything to Plaintiffs*

**There Is No $5 Million Cap on Coverage for Indemnification**. Assuming they are on the hook for their insured's liability to indemnify – as they indubitably are – Plaintiffs argue that they are entitled to contribution from 2939's Insurers, because they are liable for this occurrence only to the extent of $5 million – the minimum amount of insurance that Borgo/Industria was required to obtain pursuant to Section 9.03 of the Lease. Having paid out substantially more than that sum, they admit that Hanover cannot retroactively limit coverage to $5 million.[5] But Plaintiffs insist that, once they put in the $5 million that was the minimum amount required by the policy, 2939's insurers were required to fund the next dollar in payments on the judgment to the limits of their policies (a total of $6 million). They argue that Plaintiffs should be reimbursed for that amount by Seneca and Great American policy limits.

This argument depends for its force on Plaintiffs' contention that, because Borgo/Industria was only required to obtain $5 million in insurance coverage – even though the Lease places no cap on Borgo/Industria's obligation to indemnify its landlord, the Owner of the demised premises – there is a $5 million cap on the insurer's liability to answer for a claim in indemnity. This, however, is not the case.

The lease requires a minimum amount of coverage, but that does not set a ceiling on coverage – it sets a floor below which Borgo/Industria cannot self-insure. New York courts do not transform floors on coverage into ceilings on coverage unless language in the relevant

---

thing that is "law of the case" is that the pleading could be amended to assert a claim that was not, on its face, futile – nothing more.

[5] Although Plaintiffs contend that their coverage is capped at $5 million by the terms of the Lease, they admit that they paid out the limits of their respective policies ($1 million and $15 million) and that they are not able to recover any amounts they paid out that exceed the policy limits of Seneca's and Great American's policies ($1 million and $5 million) – which means that they admit that they are on the hook, not only for the first $5 million, but for all amounts paid in excess of $11 million. Dkt. No. 168, at 15 n.3.

contract (in this case, the Lease) specifically limits coverage to the specified amount. *N.Y. State Ins. Fund v. Everst Nat'l Ins. Co.*, 125 A.D. 3d 536 (1st Dept. 2015); *MTA v. Zurich American Ins. Co.*, 68 A.D. 3d 610 (1st Dept. 2009); *Bovis. Land Lease LMB, Inc. v. Great American Ins. Co.*, 53 A.D. 3d 140, 156 n. 14 (1st Dept. 2008). Where a contract between a named insured and a third party requires the named insured to procure a minimum amount, or "at least" a certain amount, of insurance, this simply sets the minimum amount of insurance that must be provided; it does not cap coverage at that amount. *Tomco Painting & Contracting, Inc., v. Transcontinental Ins. Co.*, 21 A.D. 3d 950 (2d Dept. 2005).

None of the cases cited by Plaintiffs supports an alternative result. In *N.Y. State. Ins. Fund v. Everst Nat'l Ins. Co.*, 125 A.D.3d 536, 537 (1st Dept 2015), the First Department held that the defendant insurance company's commercial excess liability policy explicitly provided that it was obligated to pay the lesser of either the $2 million coverage limit under a trade agreement or the $10 million limit of the policy. Similarly, in *Metro. Transp. Auth. V. Zurich Am. Ins. Co.*, 68 A.D.3d 610, 610–11 (1st Dept 2009), the First Department enforced a policy term limiting coverage to the lesser of either the $10 million umbrella policy or the $1 million coverage limit required by a trade contract. In both cases, the court enforced a coverage limit based on a contractual provision that limited coverage to the lesser of two specific amounts. There is no such language in any contract or policy in this case.[6]

---

[6] Great American's reliance on *Tomco Painting & Contracting, Inc., v. Transcontinental Ins. Co.*, 21 A.D. 3d 950 (2d Dept. 2005) is as unconvincing as Plaintiffs' reliance on the cases cited in the text. In *Tomco Painting*, the coverage for an additional insured was limited to coverage amounts "specified" not "required" in the written contract or agreement, whichever was less. The Second Department found that the amounts specified in the written contract, $5,000/$1,000,000 were ambiguous and held that "doubt must be resolved in favor of the insured and against the insurer." *Id.* at 951. In this case, there is no contractual limit to the coverage for an indemnitee or an additional insured – there is only a floor. And there is no ambiguity.

In *Bovis Lend Lease LMB, Inc. v. Great Am. Ins. Co.*, 53 A.D.3d 140, 146 (2d Dept. 2008), United National Insurance Corp.'s policy afforded coverage of the lesser of the policy limit ($5 million) or the minimum amount of insurance required to be provided to an additional insured pursuant to some other contract. In that case, the relevant subcontract (between J & A and Bovis) required that United provide a minimum of $4 million in coverage.[7] Applying the same rule as in the cases cited above – namely, that where a policy offers coverage in the lesser of two specified amounts, coverage is limited to the lesser amount – the Second Department concluded that United's obligation was limited to $4 million. *Id.* at 156 n. 14. Again, Plaintiffs' policies do not contain any language to the effect that coverage is limited to the lesser of two specified amounts. Therefore, *Bovis* has no relevance here.

Moreover, where a party is entitled to contractual indemnification – as 2939 is here – the indemnitor's insurance is always primary to policies procured by the indemnitee, and so will applied vertically. Put otherwise, where an owner of premises is entitled to contractual indemnity from another party – in this case, from its tenant – the indemnifying party's insurance must respond before the owner's policies are liable for anything. This is because the indemnitee's liability passes through to the indemnitor and its insurers. In *Indem Ins. Co. of N. Am. v. St. Paul Mercury Ins. Co.,* 74 A.D. 3d 21 (1st Dept. 2010), the plaintiff insurance company, Indemnity Insurance Company of North America (IICNA) sought reimbursement from defendants St. Paul Mercury Insurance Company (St. Paul) and Yonkers Contracting Company, Inc. (Yonkers) for a $2 million payment IICNA made to settle an underlying personal injury suit. IICNA's insured had agreed to indemnify and hold harmless the City and Yonkers from any claims arising from his work. *Id.* at 23. Like Plaintiffs in this case, IICNA argued that because it was an excess

---

[7] The subcontract called for minimum coverage of $5 million, but the first $1 million was to come from a different insurer's policy, meaning United's minimum was $4 million. *Bovis*, 53 A.D.3d at 156 n. 14.

policy, St. Paul's policy covering Yonkers and the City as additional insureds had to be exhausted prior to the application of its own policy. *Id.* at 26. However, the First Department concluded that New York's horizontal exhaustion requirement was irrelevant to the issue of coverage priority where, as here, the additional insured's liability passed through to plaintiff's insured. *Id.* The Court concluded that because IICNA's insured had agreed to indemnify Yonkers and the City, IICNA was obligated to provide coverage regardless coverage priority. *Id.* The Court noted this was especially true where – as is the case here – the plaintiff insurance company accepted tender of the additional insured's defense "unconditionally and without reservation." *Id.*

In *Scottsdale Ins. Co. v. Mt. Hawley Ins. Co.*, 213 A.D. 3d 442 (1st Dept. 2023), the First Department again rejected the applicability of the horizontal exhaustion requirement where there is a contractual indemnification of the additional insured and "a complete pass-through of liability." In that case, plaintiff Scottsdale Ins. Co. sought reimbursement from two defendant insurance companies for a $2 million payment they made to settle an underlying personal injury suit. *Id.* The First Department held that although Scottsdale provided an excess policy, because Scottsdale's insured had contractually agreed to indemnify the owner of the building where the accident occurred, Scottsdale was required to respond before the owner's primary and excess policies. *Id.*

Similarly here, Plaintiffs' place in the priority of coverage is irrelevant in light of Borgo/Industria's agreement in the Lease to indemnify 2939, which resulted in a complete pass-through of liability.

For reasons discussed earlier in this Opinion, the Court rejects Plaintiffs' counterargument that this rule should not apply because the Weisses never assigned the Lease to

2939 and contractual obligations to insure and indemnify are "personal" in nature and do not run with the land. Dkt. No. 200, at 15.

While this ruling is dispositive of the case, I can cite to several other reasons why Plaintiffs are not entitled to recover anything from either Seneca or Great American.

Seneca Did Not Receive Timely Notice and Was Prejudiced Thereby.

As far as Seneca is concerned, it is liable to no one for anything, because 2939, its insured, failed to give it timely notice of the occurrence and the resulting lawsuit, which resulted in both presumed and actual prejudice to the insurer. Seneca is absolutely correct that it is entitled to summary judgment dismissing any claim against it for this reason.

The undisputed facts relevant to Seneca's motions are as follows:

The Seneca policy both required that notice of any occurrence be given to the insurer "as soon as practicable," and that notice of any lawsuit and a copy of the pleadings in any lawsuit be forwarded to the insurer "immediately."

The accident occurred on July 19, 2016 and David Weiss became aware of it on or about September 1, 2016.

Weiss did not notify Seneca or Great American of the accident at that time.

The Weisses were sued by the Wangs on or about October 28, 2016. David Weiss was aware that he and his wife had been sued at the very least because Hanover sent him a letter on November 8, 2016 indicating that Hanover would undertake the defense of the Weisses. (Undisputed Fact 31).

David Weiss did not forward the pleadings to 2939's insurers or cause them to be forwarded to the insurer.

Seneca and Great American first received initial notice of the occurrence and the lawsuit in or about January 30, 2020.

At the time notice was given, all of the following had occurred: the opportunity to explore whether it was in the best interests of Seneca's insured to conduct a joint defense with Borgo/Industrial had passed; a note of issue had been filed (indicating that the case was trial ready) and the court was allowing only the completion of limited discovery, so there was no opportunity for Seneca to take discovery; opportunities to implead parties so that all issues (including issues raised in this lawsuit, such as indemnification) could be resolved in a single forum and lawsuit (and at lesser cost) had passed; the deadline for making summary judgment motions had passed; and an opportunity to explore settlement on the basis of apportioned liability with Bulson's insurers had passed. Additionally, just a few months after receiving notice – at a time when Seneca had barely had an opportunity to become familiar with the situation it was facing – Bulson's workers compensation carrier sued (successfully, albeit that success was temporary) for rescission of its policy, which eliminated a source of compensation for Wang, the injured party.

When it was finally notified of the lawsuit, Seneca offered Weiss independent counsel, but Weiss declined the offer of counsel and refused to implead, because he did not want to assert a claim against a "good tenant."

The requirements of the Seneca policy are perfectly clear. Weiss was required to notify Seneca of the claim and the pendency of the lawsuit so that 2939's own insurers could make their best judgment about how to proceed in connection with a claim for which they were potentially on the hook. Weiss/2939 was not authorized to omit notice because Weiss believed (or was told) that Borgo/Industria's insurer would "take care of it;" or because Hanover had

undertaken to defend the Weisses and 2939 in the Underlying Action; or because he did not want to upset a "good tenant." The record reveals no reason why Weiss could not have given the required notice; instead, it reveals that he made a deliberate choice not to comply with his contractual obligation. Whether he did so out of ignorance or because he made a business judgment not to offend a "good tenant" is of no moment. He breached a clear condition of coverage.

New York courts enforce notice conditions of the sort found in the Seneca policy. *Viles Contracting Corp. v. Hartford Fire Ins. Co.*, 271 A.D. 2d 349 (1st Dept 2000). However, for policies issued on or after January 17, 2009 (which covers the policy in this suit), New York's insurance law requires that an insurer be "prejudiced" by the insured's late notice in order to vitiate coverage under a policy. NY Ins. L. § 3420(a)(5).

Where, as here, notice is not given within two years of the time required by the policy, prejudice is presumed, and the burden rests with the insured (2939) to establish that the insurer has not been prejudice. § 3420(c)(2)(A). The notice was given three and one half years after the occurrence; three and a quarter years after the filing of the Underlying Action; three years after 2939 was added as a defendant in the Underlying Action (January 5, 2017); three years after the Weisses (the sole members of 2939) were served with a Summons and Complaint on behalf of their LLC (January 14, 2017); and almost three years after 2939 appeared in the Underlying Action (May 10, 2017). Prejudice is thus presumed by operation of law. The burden is on the insured to overcome that prejudice.

The actual insured – 2939 – has not met that burden. In fact, 2939 does not oppose Seneca's motion. On the contrary: 2939 concedes that Seneca was prejudiced, in that it was deprived of the opportunity to (1) move for summary judgment against Bulson, (2) assert claims

for indemnification against Borgo/Industria, and (3) explore settlement possibilities. Dkt. No. 210, at 9. The insured's failure to overcome that prejudice should end the analysis.

However, MBIC and Hanover – which, having covered the judgment entered against 2939, believe that they have the ability to assert the defense that 2939 rejects[8] – argue that Seneca was not prejudiced. They cite several reasons, but the principal one is that 2939, as Owner of the premises where the accident occurred, had no defense to liability under New York's Scaffold Law – which, per Plaintiffs, means the result in the Underlying Action would, in the end, not have been different if Seneca had been involved in 2939's defense.

Plaintiffs' purported showing of a lack of prejudice is utterly unpersuasive.

It is true that the Labor Law 240 imposes strict liability on even a non-negligent property owner when an accident takes place on its property. However, prejudice as a result of lack of timely notice is possible even if the ultimate result in a lawsuit would have been the same. As long as the insurer can identify something that it would have done differently if it had received notice – whether in pleading, in discovery, at summary judgment, or in mediation – prejudice can be found. *Harleyville Worcester Ins. Co, v. Wesco Ins. Co.,* 752 F. App'x 90, 94 (2d Cir. 2019).

Had Seneca received timely notice it would have demanded that Hanover clarify its obligation to cover 2939 and the Weisses, and if such assurance were not forthcoming, assume the defense of the Weisses and 2939 – whether the latter wanted them to or not (the policies require cooperation with the insurer). Seneca, unlike Hanover, would have explored the possibility of early settlement when Bulson's insurers (both CGL and workers comp) expressed an interest in mediation on the basis of 60/40 apportionment of liability. Seneca would have moved for summary judgment on contractual and common law indemnity against Bulson prior to

---

[8] No one briefed this issue.

the deadline for making such motions, which was well before Bulson's workers comp carrier

disclaimed liability and obtained rescission of its policy. And Seneca would have asserted cross

claims against Borgo/Industria for contractual indemnification in the Underlying Action, so that

the issues that are the subject of this lawsuit could have been resolved at an earlier time and in a

single proceeding.

Plaintiffs insist that its failure to do any of these things caused Seneca no prejudice. Their

arguments hold no water.

Hanover insists that there was no prejudice from its failure to explore mediated

settlement because Plaintiffs had made no settlement offer and would never have settled for

anything less than the policy limits. However, the fact that the Plaintiffs had not made a

settlement offer did not mean that it might not have been in the best interest of 2939 and its

insurers to explore the suggestion by Bulson's insurer that they approach the Wangs with an offer

to mediate and resolve the case sooner rather than later, on the basis that Bulson would take

responsibility for 60% of the settlement and the Tenants and Owner would take responsibility for

40% of the settlement. Hanover simply refused to participate in making such an offer. One

cannot predict how it would have played out; at a minimum it might have substantially reduced

defense costs, which is sufficient to constitute prejudice. The Wangs might have concluded that

getting the money they needed sooner –rather than waiting seven years for a resolution of their

claims, as ultimately occurred – was worth taking a haircut on the ultimate settlement amount.

Neither did Hanover move for summary judgment against Bulson prior to the deadline

for doing so – a move recommended in its own adjuster's case notes; as a result, any opportunity

for a settlement to which Continental might have contributed voluntarily was lost when, on May

20, 2020, Bulson's workers comp carrier disclaimed coverage on the ground that Wang's name

did not appear on the roster of Bulson's employees. Eventually, Continental obtained a default judgment declaring that it was not liable to Bulson and rescinding the policy. As a direct result, 2939 was forced to file its own declaratory judgment action against Continental. This led, not only to significant and continuing litigation costs, but to the temporary loss of 2939's claim, when the Eastern District of New York entered a judgment dismissing it. It is true that this judgment was recently reversed on appeal. *2939, LLC v. Continental Indemnity Co.*, No. 34-7466, 2024 WL 4553900, at *1 (Oct. 23, 2024). But reversal merely prolongs the litigation and increases the cost of litigation.

Similarly, Hanover's decision to conduct a joint defense as between 2939 and Borgo/Industria, without asserting any cross claim for contractual indemnification in the Underlying Action, constitutes prejudice. It is true that the claim for indemnity was not lost and can now be asserted – it is now being asserted, in this very case. But that does not mean Seneca was not prejudiced by the fact that it could not press for resolution of that issue at an earlier time and at lesser cost.

Finally, Seneca was also prejudiced by its inability to assign independent counsel to pursue a more Seneca-friendly litigation strategy on behalf of 2939 – a strategy with which the Weisses were contractually obligated to cooperate.

Plaintiffs argue that *Harleyville Worcester Ins. Co. supra.*, supports their position that Seneca has failed to establish actual prejudice. They are wrong.

In *Harleyville,* the Second Circuit found that Wesco's assertion that it was deprived of the opportunity to participate in various phases of the litigation against M&T, including discovery and summary judgment briefing, was "insufficient" to establish that Wesco was prejudiced by late notice. *Id.* at 94. However, in that case, Wesco failed to establish prejudice in the absence of

a presumption of prejudice, because notice was given within the first two years of the

occurrence. Here, Seneca enjoys that presumption because notice was not given until three and

one half years after the occurrence. N.Y. Ins. Law § 3420(c)(2)(A). Further, in *Harleysville*,

Wesco failed to identify any specific litigation strategy it would have pursued had it received

timely notice of the underlying action. *Harleyville Worcester Ins. Co, v. Wesco Ins. Co.,* 752 F.

App'x at 94. In this case, Seneca has identified numerous things that it would have done

differently had it been aware of the lawsuit. Ironically, and significantly, some of them are things

that Hanover's own case notes indicate Hanover should have done, but failed to do. If Hanover's

adjuster thought these steps should have been taken, it is hard for Plaintiffs to argue that Seneca

– which would have taken them – suffered no prejudice.

Because the failure to give timely notice resulted in a statutory presumption of prejudice,

which has not been rebutted, Seneca is entitled to summary judgment declaring that it has no

obligation to make any payments to anyone under its policy. Hanover elected to fold 2939 under

its wings; Hanover can pay the entire judgment, without any contribution from Seneca.

Great American's Policy is Excess to Plaintiffs' Policies.

Similarly, Plaintiffs cannot look to the Great American policy to recover any sums they

have already paid out.

By its express terms, the Great American Policy applies only in excess of applicable

limits of any other insurance that is applicable "to a liability that is also covered by this Policy."

2939's liability for the adjudicated negligence of its Tenant's contractor, Bulson, is "a liability

covered by this Policy." And Borgo/Industria's policies – the Plaintiffs' policies – are "other

insurance applicable to" that same liability. The policies exhaust vertically; Great American need

not answer for anything that Plaintiffs paid toward the judgment because the Great American

policy is by its terms excess to the Plaintiffs' policies. MBIC and Hanover were thus required to exhaust their policy limits before Great American could be liable for anything at all.

Additionally, the Weisses and 2939, Great American's insureds, failed to comply with various conditions in the Great American Policy. Under the cooperation provisions of the Policy, the Weisses and 2939 were required to cooperate with Great American "in the investigation or settlement or defense against the 'suit'" and "assist in the enforcement of any rights against any person or organization who may have been liable." Dkt. No. 117-3, at 35–36. The Weisses and 2939 violated this provision by repeatedly refusing to assert crossclaims against Borgo/Industria, despite repeated requests by Great American that they do so. Dkt. Nos. 162-8, at 2; 161-1, at 3–4. David Weiss testified during his deposition that 2939 did not file any crossclaims against Borgo/Industria in the *Wang* action because he was "a very good tenant." Dkt. 161-1, at 3–4. He was entitled to make that business decision, but it put him in direct violation of his duties to Great American, his insurer.

The Policy also provides that "No 'Insured' will voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without [Great American's] consent, except at their own cost." Dkt. No. 164, at 26–27. By failing to consult Great American on the facts which led to the liability determination and agreed upon damages of $21 million in the *Wang* action, 2939 directly violated the policy provision which prohibited them from "incurring any expense" without Great American's consent.

For all these reasons, Plaintiffs are not entitled to a declaration that Seneca and/or Great American are liable to it for so much as a dime.

*C.   Plaintiffs are Estopped from Denying Coverage to 2939*

It is not necessary to reach any other issues in order to decide the motions in this case. However, I choose to address one of the remaining arguments – that Plaintiffs, having defended 2939 without any reservation of rights for four years, are estopped from disclaiming coverage now. That argument is persuasive.

The New York Court of Appeals has repeatedly held that insurance coverage may be created by estoppel. *Albert J. Schiff Assoc., Inc. v. Flack*, 51 N.Y. 2d 692 698 (1980); *O'Dowd v. Am Sur. Co.,* 3 N.Y. 2d 347, 355 (1957). The Second Circuit recognizes as much. *Bluestein & Sander v. Chicago Ins. Co.,* 276 F. 3d 119, 122 (2d Cir. 2002).

New York appellate courts have held that where, as here, an insurer assumes the defense of an action and controls that defense without reserving its right to deny coverage, the insurer is estopped to deny coverage at a later time – even if it originally made a mistake about whether coverage was required. *Mazl Bldg. LLC v. Greenwich Ins. Co.*, 1623 A.D. 3d 655 (2d Dept. 2018); *Brooklyn Hosp. Center v. Centennial Ins. Co.*, 258 A.D. 2d 491 (2d Dept. 1999); *Indemnity Ins. Co. of N. Am. v. Charter Oak Ins. Co.*, 235 A.D. 2d 521, 522 (2d Dept. 1997). That, of course, is precisely what happened here – Hanover defended 2939 and the Weisses without disclaiming coverage until August of 2021, five years after the accident and almost five years after the Underlying Action commenced. During that time Hanover "imposed a posture and strategy on the underlying action that it cannot now alter." *Sparta Ins. Co. v. Tech Ins. Co.*, 2017 U.S. Dist LEXIS 177316, at *13-15 (S.D.N.Y. Sept. 28, 2017). Indeed, as the undisputed facts demonstrate, by the time Plaintiffs disclaimed coverage all discovery was complete, the dates for making dispositive motions or adding claims had passed, and the case was marked ready for trial. This court has already concluded that the delay in giving notice was prejudicial to 2939's insurers. That being so, Plaintiffs' argument against estoppel is utterly unpersuasive.

Plaintiffs cite no case in support of its argument that estoppel cannot be found in the absence of prejudice, but the court has found prejudice. Plaintiffs' reliance on cases like *In re U.S. Specialty Ins. Co. v. Navarro*, 169 A.D.3d 415, 416 (1st Dept 2019), *Central General Hospital v. Chubb Group of Insurance Companies*, 90 N.Y.2d 195 (1997), *Charlestowne Floors, Inc. v. Fidelity & Guar. Ins. Underwriters, Inc.*, 16 A.D.3d 1026 (4th Dept 2005), *Greater N.Y. Mut. Ins. Co. v. Clark, 205 A.D.2d 857 (3d Dept 1994),* and *John Hancock prop. & Cas. Ins. Co. v. Warmuth*, 205 A.D.2d 587 (2d Dept 1994) is irrelevant. None of these cases involved an insurance company successfully disclaiming coverage after voluntarily undertaking the defense of the insured.

In *In re U.S. Specialty Ins. Co. v. Navarro*, 169 A.D.3d 415, 416 (1st Dept 2019), the First Department found that the petitioner insurance company was not estopped from raising the defense of noncoverage after failing to disclaim coverage until four years after it first received notice of the claim. However, the reason for no estoppel was the fact that the insurer had not undertaken any defense of the insured in the interim period. *Id.* In fact, unlike in the instant case, the court noted that the petitioner was "minimal[ly] involved in the arbitration process." *Id.* That can hardly be said to be the case here, where the Plaintiff companies defended 2939 and the Weisses without any reservation of rights for over four years, and continued to defend them after their interests and those of Borgo/Industria, Plaintiffs' insureds, had demonstrably diverged.

In *Central General Hospital v. Chubb Group of Insurance Companies*, 90 N.Y.2d 195, 198–99 (1997), the Court of Appeals held that the defendant insurance company was not estopped from raising a defense of lack of coverage despite failing to disclaim within the prescribed 30-day period required by Insurance Law § 5106(a) and 11 NYCRR 65.15(g)(3), when they had the "founded belief that the alleged injuries [of the insured] does not arise out of

an insured incident." *Id.* The insurance company in that case missed the deadline to disclaim, but as in *In re U.S. Specialty*, it also never assumed the defense of the insured. *Id.*

In *Charlestowne Floors, Inc. v. Fid. & Guar. Ins. Underwriters, Inc.,* 16 A.D.3d 1026, 1027 (4th Dep't 2005), the Court held that an insurance company was not estopped from asserting a defense of noncoverage "since the insurer[] at all times denied liability to indemnify and refused to undertake to defense." Again, the facts of this case are entirely to the contrary – Hanover's own adjusters and lawyers concluded that coverage existed and Plaintiffs held to that position for over four years, while undertaking the defense of 2939 and the Weisses long after that.

Plaintiff's argument boils down to this: Plaintiffs cannot be estopped to deny coverage where there was no coverage in the first place, and in this case there was no coverage. But that is wrong.

In any event, N.Y. Ins. L. 3420(d)(2) provides that:

> If under a liability policy issued or delivered in this state, an insurer shall disclaim liability or deny coverage for death or bodily injury arising out of a motor vehicle accident or any other type of accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.

This provision of the law is strictly enforced; courts have held that an insurer's failure to disclaim coverage in a timely manner when it knows the facts on which coverage can be denied will preclude denial of coverage, even where the reason for the delay is taking the time to examine other possible bases for denying coverage. *George Campbell Painting v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 92 A.D.3d 104, 111 (1st Dep't 2012). In *Daimler Chrysler Ins. Co. v. Zurich Ins. Co.*, 72 A.D.3d 730, 732 (2d Dep't 2010), a car insurance company was estopped from denying coverage to its insured where "from inception of [the] underlying action,

[the insurance company] controlled the defense and had knowledge of facts constituting basis of its denial of coverage, but failed to reserve its right to disclaim coverage." *Id.*

Here, every fact that led Hanover to disclaim coverage in August 2021 was known to the James Sawicki and Donna Normile back in 2016. Those known facts led both Sawicki and Normile to conclude that Hanover did in fact cover 2939, both as an indemnitee and even as an additional insured. Significantly, Hanover's assessment was signed off on by her supervisor, Joseph Pender – the very individual who, years later, reversed field and disclaimed coverage, on the basis that 2939 was not the "Owner" of the demised premises when the Lease was signed. But the conclusion was not based on any new fact – rather, it represented a complete reinterpretation of facts that the Plaintiffs had long viewed otherwise. Under Section 3420(d)(2), Hanover's volte face comes far too late.


CONCLUSION

For the reasons discussed above, the motions for summary judgment are decided as follows:

1.      Plaintiffs' motion for summary judgment (Dkt. No. 167) is in all respects DENIED

2.      2939's cross-motion for summary judgment (Dkt. No. 166) is GRANTED to the extent of declaring that 2939 is entitled to indemnification from Borgo/Industria; that Plaintiffs are liable to insure 2939 to the limits of their respective policies; and that neither of 2939's insurers (Seneca or Great American) is liable to cover any portion of the loss in this case.

3.      The cross-motions for summary judgment by Seneca (Dkt. No. 157) and Great American (Dkt. No. 160) are GRANTED.

4.    The complaint in this action is DISMISSED WITH PREJUDICE.

The Clerk of Court is directed to remove all outstanding motions in this case from the court's list of open motions; to enter judgment dismissing the complaint with prejudice and with costs to the Defendants; and to close the file. Defendants shall undertake to provide the Clerk with a form of judgment for entry.

This constitutes the decision and order of the court. It is a written decision.

Dated: February 26, 2025

_____

U.S.D.J.

BY ECF TO ALL COUNSEL